UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE ANTONIO MARROQUIN,<br><br>Defendant. | Criminal No. 15-cr-148-06 (CRC-AK) |

**Detention Memorandum**

Jose Antonia Marroquin ("Defendant" or "Marroquin") has been charged in a thirteen count indictment with conspiracy to possess with intent to distribute one kilogram or more of heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 846.  The Government moved to seek detention, and a detention hearing was held on November 2, 2015.  At the conclusion of the hearing, the Court found that Defendant should be held without bond.  This memorandum is submitted to comply with the statutory obligation that, "the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C § 3142(i)(1).

**Findings of Fact**

At the detention hearing, the government proceeded by proffer.  In August 2014, members of the FBI and DEA initiated an undercover investigation of a drug trafficking operation.  To better understand Defendant's role, it is necessary to discuss Defendant's actions within the context of the larger drug trafficking operation.

Over the course of seven months, from August 2014 to March 2015, the investigation coordinated ten controlled buys between Christian Ferrebu (a co-defendant) and a cooperating witness.  The cooperating witness purchased from Mr. Ferrebu over 500 grams of cocaine, 50

grams of crack cocaine, and 40 grams of heroin.  Defendant Marroquin sat in Mr. Ferrebu's car during a few of the controlled buys involving cocaine, crack cocaine, and heroin.

In March 2015, police began intercepting Mr. Ferrebu's telephone conversations through a court authorized wiretap.  Through the wiretap, police heard Mr. Ferrebu tell Defendant Marroquin to make a delivery and pick up $2,100 from the recipient.  Mr. Ferrebu also told Defendant Marroquin to "be careful with the cameras."  Two minutes later, the recipient called Mr. Ferrebu and told him he left $2,100 with Defendant Marroquin.

Based on the wiretap of Mr. Ferrebu's phone, officers also learned that Mr. Ferrebu had partnered with William Estrada (a co-defendant) to distribute narcotics.  The government subsequently received court authorization to wiretap Mr. Estrada's phone.

Police intercepted a text message from Mr. Estrada to a narcotics supplier based in Guatemala, Sonia Solis (a co-defendant), telling her that "the food arrived today."  Ms. Solis then responded that "the gelatin will be for the person who calls you and asks if your name is Douglas."

On March 20, 2015, Julio Cordova (a co-defendant) contacted Mr. Estrada.  He asked if his name was "Douglas" and told him that he heard he had "some little things for him."  The two agreed to meet and police surveillance observed Mr. Estrada transfer the gelatin to Mr. Cordova.  The government did not seize the transferred materials.  Instead, they followed Mr. Cordova and saw him discard the packaging materials in the dumpster.  After rummaging through the dumpster, the officers recovered a packaging label that showed the package had been shipped from Guatemala to JFK International Airport in New York, and then to Maryland.

On June 6, 2015, four additional packages arrived in JFK International Airport that were destined for Maryland and came from Guatemala.  Dog sniffs uncovered 6.5 kilograms of heroin

in the packages.  The heroin was hidden in powder drink mixes, gelatin packs, and soup mixes.  After seizing the narcotics, the packages were sent to their original destinations.

At the time, the individuals in the drug trafficking operation were unaware that the 6.5 kilograms of heroin had been seized.  Mr. Estrada received several of the packages.  Mr. Cordova had also been expecting a package.  Once Mr. Cordova and Estrada realized they did not receive the narcotics, they began to argue on the telephone.  Mr. Cordova accused Mr. Estrada of stealing the drugs and selling them to people in Philadelphia.  Mr. Estrada restated that "when he received the boxes, they were all messed up."

On June 12, 2015, the conspirators learned that United States Customs had seized their narcotics.  Mr. Estrada spoke to another individual and said that "eight animals were lost and he's responsible."  He also stated that the items were the "black shirts, which are worth twice as much."  The government believes that "black" refers to heroin, and "white" refers to cocaine.

On August 11, 2015, Mr. Cordova called Defendant Marroquin and told him "he had a deal."  Defendant told him "he wanted something right now."  Mr. Cordova then told him, "for baking, $1,250."  Defendant Marroquin responded, "That's fine."  The government believes that this conversation referred to an agreement between Mr. Cordova and Defendant Marroquin to bake cocaine into crack cocaine.

On August 17, 2015, United States Customs at UPS intercepted a second package.  The package was addressed to "Jamie Leemus" at 11604 Lockwood Drive.  This address was actually Edgar Perez's (a co-defendant's) Lockwood address.  The package contained 88.8 grams of heroin and 300 grams of cocaine.  Police intercepted several of Mr. Cordova's phone calls to UPS claiming that he was Jamie Leemus and asking about the status of the package.

The government argues that Defendant's communications relating to the drug trade with heavily involved co-defendants in the drug trafficking operation support his involvement in the operation and a long-term conspiracy.

Defense counsel argued that a high intensity supervision program would be more appropriate for Defendant than detention. Defense counsel highlighted the fact that there was much less evidence against Defendant Marroquin than the other co-defendants, thereby implying that he was either not involved or that the police did not consider him to be as much of a danger to the community as the others. Defendant works as an electrician and been employed by the same company for the last three years. He has also lived at the same residence in Maryland for a year-and-a-half.

## **Legal Standard**

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even absent a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

A rebuttable presumption arises that a defendant constitutes a danger to the community when there is probable cause to believe that the defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed. *See* 18 U.S.C. §§ 3142(e), (f)(1)(C); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986)

(holding that a grand jury indictment establishes probable cause sufficient to create a rebuttable presumption under § 3142(e)). In such a case, it is presumed that no pretrial release condition or combination of conditions can be presumed to ensure a defendant's future presence in court or to reasonably ensure the safety of the community. *See* 18 U.S.C. § 3142(e)(3).

To determine whether release conditions can rebut the presumption that a defendant constitutes a danger to the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

## Discussion

In this case, a rebuttable presumption is triggered because Defendant is charged by indictment with conspiracy to possess with intent to distribute one kilogram or more of heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 846. This charge carries a mandatory minimum sentence of ten years. There is probable cause sufficient to create this presumption because of the indictment handed down by the Grand Jury. *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). As such, the serious nature and circumstances of the offense strongly favors detention by creating a rebuttable presumption that no pretrial release or combination of conditions will ensure the safety of the community.

The second factor, the weight of the evidence, favors detention. The FBI and DEA investigation coordinated controlled buys that observed Defendant Marroquin's presence while his co-defendant sold large amounts of cocaine, crack cocaine, and heroin to a cooperating witness. The government also has several intercepted conversations that indicate Defendant was

an active participant in the drug trade and conspiracy. As such, the weight of the evidence supplements the presumption that he should be detained.

The third factor, the history and characteristics of the Defendant, weighs neither in favor of nor against detention. Defendant has worked as an electrician for the last three years and lived in the same residence for a year-and-a-half. The favorableness of these characteristics, however, are not enough to overcome the presumption of dangerousness, especially in light of the other factors.

The fourth factor, the danger to the community, favors detention. Defendant is intertwined with a large-scale drug trafficking operation that introduced heroin, cocaine, and crack cocaine into the region from distant locations. Given Defendant's willingness to engage in the illicit drug trade, despite having gainful employment, the Court cannot be assured that he would not continue in the drug trade and pose a continued risk to the community if released.

## Conclusion

Based upon consideration of all the evidence and the factors set forth in § 3142(g) and weighing all the lesser restrictive alternatives to pretrial detention, this Court concludes by clear and convincing evidence that no condition nor combination of conditions exist that would ensure the safety of the community. Therefore, the Government's motion for detention without bond is granted.

Dated:   __11/4/2015__                                  _____/s/_____

                                                                        ALAN KAY

                                                                        UNITED STATES MAGISTRATE JUDGE